Hay, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit brought on a contract entered into between the Commissioner of Indian Affairs and the plaintiff. The plaintiff alleges that the United States failed to comply with the contract, and he claims damages in the sum of $74,000. The plaintiff requested that certain timber in the Klamath Indian Reservation, Oreg., be advertised for sale. In accordance with his request sealed bids were invited in the local newspapers in October, 1912. On November 30, 1912, the plaintiff made the highest bid, $3.51 per thousand feet, and his bid was accepted on December 18, 1912. The contract was signed on January 14, 1913, by the plaintiff, and was approved by the Acting Commissioner of Indian Affairs on January 24, 1913.
On May 9, 1913, the plaintiff was notified that he might proceed to the cutting of the timber. He then requested permission to take out certain rocks and bowlders from the Williamson River, which was granted on May 26, 1913. This permit was revoked on June 8, 1913. On July 8, 1913, the plaintiff was granted permission to improve the aforesaid river to facilitate the driving of logs; this permit was revocable at the discretion of the Secretary of the Interior. The Secretary on November 12 revoked his permit to use the river for driving logs upon the ground that such use of the river would be injurious to the fish in the river.
The plaintiff complains that he has been greatly damaged by this action of the Secretary of the Interior. He also claims that he has a right to use the Williamson River for driving logs, because he says that it was understood before the contract was entered into that he should have the right to so use the river. There is no evidence that any such right was conceded to the plaintiff by anyone having authority in the premises. It is true that the plaintiff made investigation before he signed the contract as to the feasibility of using the river for the purpose of logging, and talked with the superintendent of the Indian school on the reservation as to what had been done in the past about the use of the river. He also avowed his intention to use the river in his logging operations, but all of this was before he signed the contract. *24 Wben he did sign the contract there was nothing in it referring in the remotest degree to the use of the river.' If the plaintiff regarded its use as being of such vital importance to him, it is strange he failed to insist that the contract should be so drawn as to permit him to use the river. The contract was complete on January 24, 1913, when it was approved by the Commissioner of Indian Affairs. It was not until nearly four months after that time that the plaintiff applied for permission to move certain obstructions from the river. It is true he was given permission to use the river for driving logs on July 8,1913, with the stipulation that this permission might be revoked by the Secretary of the Interior at his discretion. The Secretary exercised his discretion, and for good and sufficient reasons revoked the permit on November 12, 1913. It can not be said that this permit was any part of the contract. It was given long after the contract was entered into. It was a permission in the nature of a gratuity, and attached to it was an express provision that it could be revoked at will.
There is no evidence in this case which would tend to show that the parties to the contract intended the plaintiff to have the right to use the Williamson River for logging purposes. Certainly the court can not write into the contract new provisions so changing it as to defeat the plain terms of the contract. Looking at this contract in the light of all of the evidence which has been taken in the case, it can not be said that it does not contain all necessary stipulations between the parties with reference to the subject matter of the contract. If the contract does contain all necessary stipulations between the parties, parol evidence is not admissible to show what the contract means.
The Supreme Court of the United States says:
“Previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the subject matter of a contract and the sense in which the parties may have used particular terms, but not to alter or modify the plain language which they have.used.” Brawley v. United States, 96 U. S., 168, 173.
The plaintiff failed to perform the contract. The only things which will excuse the nonperformance of a contract *25 are the act of God, the law, or the other party. Dermott v. Jones, 2 Wall., 1; The Harriman, 9 Wall., 161, 172; Railroad Company v. Smith, 21 Wall., 255; and, as especially applicable to this case, Jacksonville Railway v. Hooper, 160 U. S., 514-527, where the impossibility relied on arose subsequent to the making of the contract. Nothing was done by the defendants which prevented the plaintiff from performing his contract. He failed to perform it, and can not now be heard to claim damages, occasioned by his own fault or negligence.
It is ordered by the court that the petition in this cause be, and the same is, dismissed, and judgment is rendered in favor of the United States against the claimant for the cost of printing the record in this cause in the sum of $177.59, to be collected by the clerk as provided by law.
Downey, Judge, BaRney, Judge, Booth, Judge, and Campbell, Chief Justice, concur.