**Arnold A. SMITH and Rachael Smith, his wife, and Herbert Smith and Evelyn Smith, his wife, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 26027.**

United States Court of Appeals, Ninth Circuit.

April 18, 1972.

Steven Schwarz (argued), William Massar, Meyer Rothwacks, Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., Richard K. Burke, U. S. Atty., Richard C. Gormley, Asst. U. S. Atty., Phoenix, Ariz., for defendant-appellant.

Jarril F. Kaplan (argued), of Moore, Romley, Kaplan, Robbins & Green, Phoenix, Ariz., for plaintiffs-appellees.

Before HAMLEY, KOELSCH and CARTER, Circuit Judges.

## PER CURIAM:

Herbert and Arnold Smith, together with their respective wives, commenced this suit in the District Court against the United States to recover damages for the use of their warehouse. Jurisdiction was invoked under the Tucker Act.[1] The matter is here on the appeal of the United States from a judgment for the Smiths.

The facts are undisputed. On May 8, 1964, United States Internal Revenue Service executed a distraint warrant for unpaid taxes owing by Lichty Printing and Business Forms, Inc. Levy was made upon Lichty printing presses and other equipment in Smiths' building, which Lichty had been renting on a monthly basis.[2] The seizure was accomplished by simply padlocking the building and posting the customary notices.

The Smiths thereupon notified the government agents that Lichty had failed to pay rent for several months and demanded that the government either vacate the premises or pay for their use. They informed the government's agents that the rental would be at the rate of $45.00 per day, that being the sum exacted of Lichty. The agents declared this sum excessive, but did not relinquish possession.

On June 5, 1964, Lichty was adjudicated a bankrupt on a voluntary petition and a receiver was appointed pending selection and qualification of a trustee.

---

1. The Act, so far as is relevant, is codified in 28 U.S.C. § 1346(a) (2), which provides:

    "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

    \* \* \* \* \*

    (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department [of the United States], or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

2. This case was previously here in 1966. Smith v. United States, 362 F.2d 366 (9th Cir. 1966). We concluded that the nature of Lichty's tenancy was unclear and remanded the matter to the district court for a determination. Upon such remand the parties stipulated that, although the Smiths and Lichty had contemplated entering into a formal lease for a term of years, no such agreement was ever executed; that "in October 1961 Lichty went into possession of the premises on a month to month tenancy at a rental of $1350.00 per month or $45.00 per day."

Several days later, the government, without notice to the Smiths, delivered the keys to the receiver for Lichty, who continued in possession of the premises until October 12, when the printing equipment was sold and removed. The receiver then turned the keys over to the Smiths.

The Smiths predicated their claim alternatively on a theory of an implied contract or a taking of property without compensation, in violation of the Fifth Amendment. The trial court predicated judgment upon the inverse condemnation theory and did not discuss implied contract.

On this appeal the government contends it did not take the Smiths' property. In substance, the government argues that the lease between the Smiths and Lichty remained in effect throughout the period that the building was padlocked; that, since the Smiths never terminated the tenancy by judicial proceedings, the Smiths had no right to possession with which the government could interfere. We must disagree.

■ Under Arizona law, a month-to-month tenancy may be terminated for nonpayment of rent without notice to the tenant. Ariz.Rev.Stat. § 33–341, subsec. B. After a tenant has been in arrears in his rent for five days, the landlord may "re-enter and take possession, or, without formal demand or re-entry, commence an action for recovery of possession of the premises." Ariz.Rev.Stat. § 33–361, subsec. A. The landlord's right to possession accrues as soon as the tenant becomes five days in arrears in rent. We do not have to decide whether a landlord might, under Arizona law, be required to resort to judicial proceedings to evict a tenant who prevents a landlord from retaking possession for, in this case, it was the government, not the tenant, who refused to let the landlords reenter their building.

■■ From the outset, the government was fully aware that the Smiths insisted upon either possession of the premises or rental for their use. "[I]f the United States occupies a person's premises, it is, ordinarily, liable for the rental value thereof even though it occupies them against the will of the owner and without an intention on the part of the United States to pay rent. This liability arises under the Fifth Amendment prohibiting the taking of private property without the payment of just compensation." Niagara Falls Bridge Comm. v. United States, 76 F.Supp. 1018, 1019, 111 Ct.Cl. 338 (1948). The government, of course, enjoyed the right to seize Lichty's property to enforce its tax lien. However, it did not have the right to seize the property of the Smiths and to use the same as a storage facility without running afoul of the Fifth Amendment. The Smiths were entitled to compensation. Carroll v. United States, 229 F.Supp. 891 (W.D.Ark.1964); Feldwin Realty Co. v. United States, 169 F.Supp. 73, 76–77 (D.N.J.1959).[3]

The judgment is affirmed.

3. The government argues that, in any event, it should not be liable for rent beyond June 12, 1964, the date on which it gave the keys to the building to Lichty's receiver. However, the agreement between the Internal Revenue Service and the receiver, under which the transfer was made, stated that the property being turned over to the receiver was the "[p]roperty of Lichty Printing & Business Forms, Inc., bankrupt, which was levied upon and seized prior to the filing of the Petition in Bankruptcy . . ." The "property" referred to in this agreement was only that to which the government was lawfully entitled to possession—Lichty's printing equipment. Since the transfer of the keys to the receiver was made without notice to the Smiths and the Internal Revenue Service seizure notices and padlock were kept on the building until the receiver's sale, we agree with the District Court that the government's occupancy of the building continued until the premises were returned to the Smiths. The receiver's possession of the premises was derived from the government, not the bankrupt; and the initial taking being wrongful, the government remained liable until the premises were returned. Feldwin Realty Co. v. United States, 179 F.Supp. 70, 72 (D.N.J.1959).